Our last case today is 22-1951 Schwendimann v. Neenah. I have no idea whether I said either of those names right, so counsel will correct me when they come up. Okay, now I'm going to go out on a limb again. Mr. Padmanabhan? Padmanabhan, Your Honor. Again? Very good, thank you. Say it one more time. Padmanabhan. Padmanabhan, okay. But you guys, wow, there's a lot of names here that I'm having trouble with. So how do I say the name of this case? It's Schwendimann v. Neenah. Okay, I'm pretty close. Please proceed. Thank you, Your Honor. Good morning. May it please the Court. Our claim language requires a retention aid. The specification says that latex in certain chemical combinations can serve that function. But that does not mean that whenever latex is included, it is acting as a retention aid. Can I ask an upfront housekeeping question? If we find the board did not err on claim construction, do you concede that we should affirm an unpatentability? Yes, Your Honor. Thank you. Yeah, if you agree with their claim construction, we don't have a separate argument on anticipation. That's correct. So this, just to make sure I understand it, this case is about like iron-ons? Is this like t-shirt things? Yes, t-shirt iron-ons. Like an iron-on, something on a t-shirt. Yes, and Judge Cunningham heard part one of this for the dark t-shirts. This particular patent is for light t-shirts, meaning white or lighter colored t-shirts. And so, specifically, because Kranzer includes latex, doesn't mean that latex is acting as a retention aid. The district court understood this distinction. Finding that the term retention aid is a material that aids in the binding of an applied colorant. No, Your Honor, so there's two types of claims, and so this applies to, I was just using retention aid as an example. So you'll see a set of claims where there's three requirements, and sometimes it's retention aid, and sometimes you'll see claims with four requirements. And so all of them, I think, have the film-forming binder, and maybe the emulsion. I don't have it specifically, but I can look through the claims. I'm sorry, and each of the claims are connected to the code transfer sheet that is then used to put the image on the t-shirt. Yeah, so each of these is a sheet you print the image on, and because it's light transfer, it's applied to the shirt, and then you have it. And it goes through the composition of that. I'm sorry, what particular claim term are you saying that the board wrongly construed? Go to claim one, counsel, claim one, very broad. Which of those claim terms? Are you on the 200 patent? I'm sorry, which patent? Yes. Okay, so if you look at claim one. It's on 773, but that's okay. I was on the 773 patent, if that's okay. Yeah, I can do the same. I just didn't know which. So if you go to the 773 patent, claim one, we believe the board got wrong. Each of those terms, acrylic dispersion, elastomeric emulsion, water repellent, and plasticizer. And the total list would include the... That's a lot of things now. That's all the words in the claim. For the benefit of the students, I'm going to read the claim. They know what it is. It's a polymeric composition comprising an acrylic dispersion, an elastomeric emulsion, a water repellent, and a plasticizer. And as I understand it, your view is that the district court misconstrued four of these words by referring to... Saying that whatever these claim terms mean, they at least cover the example materials that are in the specification. And your view, as I understand it, is no, that's not the right construction. The construction should be functional, based on functional language. For example, a water repellent is something that repels water. Exactly. That's exactly right. Okay, and why can't... My view on this was why couldn't it both be correct, in this sense? We had a case earlier today where we talked about... There's a case where it says claims only have to be interpreted as much as they need to be in order to resolve the dispute that's before the court. And in this case, the prior reference had a T-shirt transfer sheet that included materials that were listed in their examples for each of those components. The equivalent dispersion in their last American lawsuit was a water repellent and a plasticizer. So why wouldn't it be that the court could say this is enough, it's enough for these claim terms to reinterpret them to say at least they have to cover the exemplary materials identified in the specification? Your Honor, the answer to that, and I'll do an example with it in just one second, but the real answer to that in this record is each of those ingredients, whether we call them chemicals or not, each of those ingredients may act as a water repellent or a retention aid in a given composition. But it's undisputed on this record that they may not, which is why the thing that happened in the district court where they construed it to include... They said it functioned, whether it's water repellent or not, and I can read the retention aid one. But basically they construed it with the function is appreciating that distinction of saying, hey, look, yep, you could have a list of ingredients, and you're right. In a given context, in a given composition, it may act as a water repellent or a retention aid or any of those other terms. But it's absolutely true that it may not. And so what happens is the reason it makes a difference is... But the court found that the Cronzer 769 did disclose each of those elements, and Nina had argued that they did so even in a way that met the functional requirements that you're saying should exist. So the board was careful in saying that our arguments where we said it didn't disclose, and it really doesn't disclose that a retention aid, for instance, it doesn't... In Formula 7 up, there's no discussion of saying that in that particular formulation, a particular... The latex is acting as a retention aid or the latex is doing... There's no disclosure in Cronzer actually. So if you look at the expert reports on, like, water repellent, for instance, and that example is in our brief, which is why I'm bringing it up, is if you look at Nina's citations for it, they'll cite to the chemical. Their expert will say, yep, that's a generally known water repellent, not saying it's a water repellent specifically in that formulation or saying that it's an inherent property of that chemical, but just saying it's a water repellent. And then to the extent saying it's a water repellent by citing back to the Williams patent or Schwendemann's patent and saying... I just want to understand your argument. In your opinion, does Cronzer 769 disclose all of the elements, but in your opinion, it potentially does not disclose the functions? Is that a good summary of your argument? No. I want to be careful about it because... So when you read Cronzer 769, and I'm not even saying read it start to finish, even a perusal of it, and it's why I was careful to say it's in a chemical combination. So I'm not saying Cronzer doesn't disclose a number of chemicals that could act in each of these functional ways, whether it's a water repellent, whether it's a retention aid, whether it's a film forming binder. The problem is you'll see the sheer number of combinations Cronzer discloses and how many failures there are. But there's not a single combination in there, which is what's remarkable, that has the claimed combination. And that discloses the... That's a different argument. That's a very different argument, isn't it? That's the argument that is Cronzer doesn't disclose what's claimed, which is different than what you're arguing here. Is it the claimed constructions? It's related in this way, Your Honor, and maybe I wasn't clear. The reason those are related in this instance is when I say Cronzer doesn't disclose the claimed combination, it's because you have to know the functions of those particular chemicals in each of those combinations. Like they use 7F. But you also said that Cronzer doesn't disclose a particular... Because Cronzer also is directed to a transfer sheet from the T-shirts, right? Yeah. Okay. And what you're saying, what I heard you say is that Cronzer doesn't teach a transfer sheet that has the four elements that are recited in Claim 1. Instead, they had to pick and choose different parts, different elements. Is that what you were saying? I'm not saying it... So I thought I was answering the question where I can't say Cronzer is not, just as you pointed out, Cronzer is related to like T-shirt transfer. And so in that sense, Cronzer is going to have the concepts that we're talking about somewhere in there. But then when they get to the formulations, which they have many, not just one or two, and they have a lot of failures. But when you look at those specific combinations, they were able to find one, but Cronzer doesn't teach what the elements, what the chemicals do within a particular formulation. Maybe can you answer this question? Can you tell me what Cronzer 769 is missing? Maybe answer that for me. So Cronzer 769, for instance, does not specifically teach in a formulation, for instance, that latex in that particular formulation that they're relying on is a retention aid. Actually acts to protect the image. Or Cronzer, for instance, does not say that there's another ingredient that specifically acts as a water repellent. And so the problem for Cronzer, the problem in Cronzer is you can see a lot of chemicals, and that's why the board is doing it this way. Because the board can't meet your standard of either explicit disclosure or inherency in doing its anticipation analysis. If it construes the claim even as the way the district court construed it, appreciating exactly applying Phillips and saying, yep, there's a function to this. Do you agree with the district court's claim construction? We do, Your Honor. What about the district court disagree with you that we should interpret the word plasticizer, for example, to mean that plasticizer component provides plasticizer functioning to the overall resultant product of the claim, right? Your Honor, I would disagree with that in this way, Your Honor. So when you look at the district court's construction of plasticizer, for instance, it says a material or materials that act as a softening agent. So they say that. And if you read on page, I think it's appendix 654, what the court says in all of these is, and they were talking about the plaintiffs in this case when you go back for infringement. But what they said was, hey, you have to prove this based on the materials in the accused product satisfying these requirements, meaning exactly what I'm saying is there's only two or three ways to prove something. One, the prior art says it or it's inherent, or you have to look at a specific formulation, develop the evidence to say, yep, in this specific formulation, this ingredient is acting as a water repellent or is acting as something. What about, I'm looking at page 4859, and there, the district court said there is more dispute as whether the transfer sheet need only incorporate one that is capable of providing the identified characteristic as defendant's content, or must incorporate such component in sufficient amount to actually provide the desired characteristic as plaintiff's content. And he says on the first dispute, the court agrees with defendants. So that means that the plasticizer need only be capable of providing the characteristic associated with plasticizing. So, Your Honor, he's careful to go on, and in that same paragraph that you're reading, if you go two or three lines down, the reason the court did it is, I believe, because they didn't want to further limit it to the embodiment. So the court says, as defendants further observe, plaintiff's construction threatens to limit the claims to the disclosed embodiments, which here would be improper. Between that and then the statement that I read to you on the second dispute, and if you just look at the claim constructions, you can see that the only way, I'm sorry, let me, I apologize, I know you want to ask another question. The only way for us to prove infringement, as the district court intended, was us to look at the formulation that we're accusing of infringing. Look at the ingredients and say, yep, this ingredient is playing the role that you say, whether it's for plasticizer, whether it's for- It is capable. Okay, counsel, if Judge Stoll has any other questions, I'm going to let her ask, but you've used almost all your rebuttal time as well. Okay, so then let's hear from Mr. Reschetti. Did I get your name right? Reschetti, yes. Yeah, Italian, I got it. Good morning, Your Honor. This is a case in court. Joseph Reschetti for Appellee Nina, and with me, my partner, Alexander Walden. And so I'd be more than happy to just start with questions, but I think this is a case of a very straightforward claim, very broad, four ingredients. And the spec and the claims, and when you look at the board's decision, and Judge Stoll, you stated it perfectly. All they said, they didn't define the outer limits of the claim, they only defined it to the extent they needed to rule on the ground. And all they said was, these terms like water repellent, just add a comma and say, at least includes the example set forth in the specification for the water repellent claim, as it's discussed in the spec. And in going through all their responses, there's no intrinsic evidence to suggest that was improper. And I thought the- Okay, well, so what the spec says, I mean, we'll just stick with water repellent. I'm looking at the 773, if you happen to have that one. I'm going to, the water repellent language is column 9 to 10. So I'll give you a second to get it brought up with me. Right with me. Column 9 to 10. So what does water repellent, it says, water repellent may also be incorporated into order to improve the washware resistance of the transferred image. Examples of additives include, and then polyurethanes, wax dispersions, and it gives a bunch of, mineral wax, a bunch of examples. But is the board correct that if a reference discloses one of these examples, but suppose the reference discloses one of those examples, but not in a sufficient quantity to actually operate or function as a water repellent. Like suppose there's just a smidge of mineral wax, like, you know what I'm saying? Just a tiny little dash of mineral wax, and it doesn't actually act as a water repellent because it isn't there in sufficient quantity to do so. Is that the board's construction? And I think your question is a good one, but it goes to the claim language drafted, right? The claim language doesn't require any amount, much less a sufficient amount. Well, the claim language requires water repellent. The ingredient, right, requires a water repellent. And the specification explains that a water repellent are these suitable materials. And so I think the one thing that gets a little confused. That's why I wrote a sentence. Water repellent to improve the washware resistance of the transferred images. Examples include. So, I mean, I think, I mean, I guess I could be wrong, but I kind of think it's sort of saying, you know, these things can act as water repellents when they improve the washware resistance of the transferred image. I mean, I don't know. Maybe I'm not reading the spec right. I guess, Your Honor, how we would look at this is, just from a claim construction standpoint, is we start with the claims construction. We start with the claim language, as Phillips tells us to do. And we work through that analysis. We look through the other claims. And the other claims are instructive, dependent and independent, because they explain when the patent owner is referring to water repellent as an example, but any of the claim terms, that what they're referring to is a list of materials. And we see that through their use of Marcouche groups. And they do that in independent claims 10 and 14. And this is, as this Court, you know, is well aware, a very common practice in patent prosecution. And you identify a set of materials that satisfy the limitation. Why don't you explain what a Marcouche group is for the benefit of the crowd? Absolutely. Do you think the crowd cares? I don't even care. Go ahead. They might. It's just a way in which a patent owner, when they're drafting their claims, can narrow down a limitation and say, it must come from one of these materials. And what's nice here is the Marcouche groups create a narrower subset of the example. Sometimes they parallel the specification perfectly. But what the board did was a little nuanced, right? Their independent claims were broader. They said at least includes the examples in the specification, but not limited to. And that was the correct way to interpret the claim, because these claims are broader than the other claims in the patent that have the Marcouche group. So, for example, if I have a dependent claim that has a Marcouche group, and I list out certain examples like Claim 2 or Claim 12, right, these are examples where you would know under the claim construction precedent that the independent claim must include at least what's the subject matter disclosed and required in the independent claim. So they're important for that. So you think it's possible for a water repellent to be a water repellent under this claim as long as it has a smidge of mineral wax, even if it's not enough to actually repel water? And I think this is why. That's a yes or no question. It's a yes in the context of these claims, this specification. And it's a yes because what they're asking the function to be read into is not the water repellent. The claim says water repellent. Aren't I supposed to interpret the plain meaning of the claim term? Yes, but water repellent, as the specification in the claims indicate, is a list of suitable materials. So is it your view that in this case the patentee acted as his own lexicographer and potentially deviated from the plain and ordinary meaning of the word water repellent when listing suitable materials, such that even if those suitable materials are not present in sufficient quantity to actually repel water, they're nonetheless water repellents? So what I would suggest, Your Honor, is that the function of repelling water, when you look at patent owners' arguments, is not about the ingredient itself. It is about the composition as a whole. And the claims are directed to transfer layers and polymeric compositions, which is broader in concept than the T-shirt image transfer that was spoken about. And their argument is not that water repellent. These are all examples of known water repellents. But they're saying that the composition as a whole, the polymeric composition, has to repel water. And that's different. I think a simple analogy to a cake. If it's a cake composition that requires flour, salt, and a sweetener. Sugar is a sweetener. But just because I put a sweetener in the cake, it doesn't mean the cake composition as a whole is sweet. And that's what they're conflating. If the patent owner wanted claims, and what's more important about these claims... This claim is written to a polymeric composition comprising a water repellent. So there has to be a water repellent, right? Just like a cake composition is directed to flour, salt, and a sweetener. But the amount of the sweetener dictates it. Now these claims don't have amounts. There's other claims that do. What about the district court proceedings? Do I remember correctly that Schweinemann was relying on the district court's claim constructions? Or asserting that the district court's claim constructions are what the board should adopt? That is correct. And what did the district court say about this variation that you're talking about? That the claims did not cover anything with respect to a sufficient amount. The district court's decision said these claims are not directed to... They don't impart any function to the composition as a whole. And just to be clear... Let me just grab Appendix X. So at 4859, the court made clear about the notion that this was only about elements that are capable of being a water repellent. So that was one piece that the judges were on. On 4859 and 4860 from the appendix, we see the court saying that nothing in the claims refers to, let alone requires, any amount of any of the recited materials. The sentence above that says nothing in the claim language requires that any of these materials impart any desired characteristics for the release layer. That's the composition as a whole. Okay, well what about Column 10? I'm still on that 77% I'm at line 59 on Column 10. The film forming binder, e.g. acrylic dispersion, that's one of the claim elements in Claim 1, right? Acrylic dispersion? Yes. Is present in a sufficient amount so as to provide adhesion of the release layer and image to the receptor element. Isn't that sort of suggesting that there has to be an amount sufficient to perform the function? Under a preferred embodiment. This is under Release Layer Formulation 1. So yes, they could have drafted claims that way. The preferred embodiment has to have enough of the element to actually perform the function, but the claims themselves don't? That's exactly correct, Your Honor. This is the most preferred embodiment. So the claim, the way they drafted the claim is incredibly broad. It covers all the embodiments, not just the most preferred embodiment. And there's varying levels of scope in the claims that they obtained and were awarded. And would you also tell me that the dependent claims tend to go into the more specific and point towards the preferable amount of weight of various elements? So that the dependent claims cover, we're not reading the preferred embodiment now, the dependent claims are directed to them? There's definitely dependent claims that go into the amounts and weights. And so I think it's a perfect example of, it's a cautionary tale that when you draft your claims, be careful what you wish for. And if you get something that really only includes four ingredients, if you wanted the composition as a whole to have certain functionality, put in a wear and close that says the composition repels water. If you want to have a sufficient amount, put in a sufficient amount. I think it's that, we're working with the claims that were drafted, and I think the board's analysis followed Phillip's guidance perfectly. And unless I'm mistaken, none of the claims at issue, for example, if I look at the 773 patent, the only claims at issue in this PTAB petition are 110, 12, and 14. And none of them are limited by weight, correct? That's correct, Your Honor. Yeah, so all the PTAB did here was find anticipated the broad claims that don't have specific weight limitations, but they did not touch, I don't even know if you asked them to touch, I doubt it, the weight limiting claims. That's correct, Your Honor. Okay, anything further? Unless there's any other questions. I mean, just one further thing about retention aid, just to make clear, I mean, the board below did find that issue was waived because it was raised in their SIR reply. So the discussion of the retention aid, I just wanted to make it clear, it's in our briefs, so we'll rest on that. But that's an issue the board found was waived and that they didn't appeal in this case. Thank you. Thank you, counsel. Your Honor, that last point on retention aid, it's not a finding that we waived retention aid on claim construction. So the claim construction issue is still live as the retention aid. Your Honor, I want to go back to this capability issue, and there's two things I want to point out and just have you consider as you go back on this, is the district court's opinion, where you're reading that capable language on, I think it's page 15 of the opinion, and I'll use your citation, on appendix 4859. It really does go to the sufficient amount, if you look in the next paragraph, and the judge really didn't put it in because he was afraid that it would go, tie it more narrowly to the disclosed embodiment. But more importantly, on the second dispute, where you can see how the judge does agree that when we're proving infringement in district court, we'd have to show that those materials that are in the accused products actually meet his specific requirements, which... We're not bailing by any of that, right? You're not, Your Honor, but I'm just pointing out that that is, it's more supportive of the idea that our construction is correct. The other aspect of it that's supportive of our idea that our construction is correct is, when Nino was also applying Phillips and arguing for construction in the district court, they didn't take this position that it was just a list of ingredients. They also looked at the exact sentences that some of which you talked to Mr. Ricchetti about, that these do, this functional language does provide, whether it's mechanical stability or whether it's water repelling or whether it's binding the colorant. And in each of those instances, the board never, the district court never said it's just capable of. They're actually saying that is the function that must be performed. And under Phillips, it is the plain meaning of water repellent, or it is the plain meaning of many of those words. Can I just, quick question to make sure I understand. I think the position of Nina is that it has to be water repellent on its own, but it doesn't necessarily mean that it has to impart the function of repellent water for the whole transfer sheet. Do you agree with that? I don't, Your Honor. I don't agree that that's true, but there's also. You don't agree that that's their position? Oh, no. That is their position, right? That is their position, right. And it's your position that it not only does the component have to be water repellent, but also it has to impart the functionality of repellent water for the transfer sheet. Yeah, and yes. Yes or no? Yes. But, Your Honor, let me just, and expand on one part of that. So when people say, like when Nina says in the record, something is a water repellent, there is no evidence that any one of these ingredients is only, like, and that's why I said the inherency. There's only three ways to do this. Either the prior art says, here's my chemical composition, and I'm saying this chemical I'm using to be a water repellent, which case it would be a teaching. Or we'd say, oh, everybody knows, or this ingredient is always a water repellent. Inherently, that's all it does. That would also meet that teaching. If those two... Okay, why, though, Mr. Reschetti had a nice little analogy, which I could wrap my head around, which is like a recipe that says add a salt, add a sweetener. Sugar is a sweetener. That doesn't mean the cake is necessarily sweet. You know, you've asked to have a polymeric composition which adds a water repellent. It could be just a pinch of water repellent, like a pinch of salt in a recipe or something. It doesn't make the whole thing salty. But there is salt in the recipe. So here you have a water repellent in the recipe for your polymeric composition. Why does the composition itself have to be water repellent? And, Your Honor, the reason is really it has to have... And this is what the spec says, too, about water repellency. It doesn't make any sense in the context of this spec, if you're reading just doing normal Phillips, is to say here's my sheet and the function that I want is water repellency and to say, well, there's a smidge of whatever you think might be a water repellent. You don't know if it's a water repellent unless it's acting as a water repellent. And that's my point is any of those ingredients aren't inherently water repellents. It's only if they're put in a particular way do you even know that functionality is being used. Some of them, for instance, could be a surfactant but not a water repellent. Your argument assumes that it has to, whatever the plasticizer is, that it has to impart that on the whole product, the end product. In the composition, otherwise you won't know. And the reason for that is why I said there's only three ways you know something is happening. If the prior art doesn't say this ingredient, I'm using it as a water repellent. There is absolutely... There are some dependent claims that I believe Chief Judge Moore talked about with opposing counsel that would give you that sort of sufficient amount so that you could know potentially what is actually happening on the entirety of the composition as opposed to the more general claims that we've also been talking about that are actually the subject at issue here. And Your Honor, there are dependent claims that may have some ranges, but the main point, if you go back to Phillips, the thing that's missing here is none of these ingredients are uniquely any one thing. They're only that characteristic if you can only assess that in a particular combination. And so the falsity of it is you can't just say polyethylene glycol is always a film-forming bond. Okay, counsel, I think you have your argument. You're way over time. I thank both counsel for their argument. This case is taken under submission. We're going to take a brief recess, and then we're going to come back, and we would love it if you students were able to stay, and we'd be happy to answer any questions you have. So we'll just take a very brief recess. Thank you. All rise. The Honorable Court is in recess.